# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MATTHEW W. MCDONOUGH,

                Plaintiff,

      v.

UFCW NATIONAL HEALTH AND WELFARE FUND,

                Defendant.

CIVIL ACTION NO. 3:22-CV-01209

(MEHALCHICK, M.J.)

## MEMORANDUM

Before the Court is a motion for summary judgment filed by UFCW National Health and Welfare Fund ("Defendant"). (Doc. 17). On August 3, 2022, Plaintiff Matthew W. McDonough ("McDonough") filed this action pursuant to 29 U.S.C. § 1132(a) to recover benefits under an Employee Retirement Income Security Act of 1974 ("ERISA") regulated plan. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c) on November 14, 2022. (Doc. 10). For the following reasons, Defendant's motion for summary judgment shall be GRANTED.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. PROCEDURAL HISTORY

McDonough initiated this action on August 3, 2022, pursuant to 29 U.S.C. § 1132(a) to recover benefits under an ERISA regulated plan. (Doc. 1). On October 14, 2022, Defendant filed an answer to McDonough's complaint. (Doc. 8). After a period of discovery, Defendant filed a motion for summary judgment on February 24, 2023, and a brief in support of its motion on that same day. (Doc. 17; Doc. 18). On February 24, 2023, Defendant filed a

statement of facts and corresponding appendix. (Doc. 19; Doc. 20). On April 12, 2023, McDonough filed an answer to Defendant's statement of facts and a brief in opposition to Defendant's motion for summary judgment as well as an answer to Defendant's statement of facts. (Doc. 25; Doc. 27). On April 26, 2023, Defendant filed a reply brief to Defendant's motion for summary judgment. (Doc. 29). Defendant's motion has been fully briefed and is now ripe for disposition. (Doc. 17; Doc. 18; Doc. 19; Doc. 25; Doc. 27; Doc. 29).

B. SUMMARY OF MATERIAL FACTS

This factual background is taken from Defendant's statement of material facts and accompanying exhibits. (Doc. 19; Doc. 20). McDonough has filed his response to Defendant's statement of facts and has provided accompanying exhibits. (Doc. 27). Where McDonough disputes facts and supports those disputes in the record, as required by Local Rule 56.1, those disputes are noted. Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to McDonough as the non-moving party, with all reasonable inferences drawn in his favor.

Defendant is a joint labor-management employee trust fund that is governed by a Board of Trustees. (Doc. 19, ¶ 1; Doc. 1, ¶ 2). Defendant is self-administered in that it employs an in-house staff to perform all of the administrative functions such as collecting contributions, contracting with insurers or other organizations that maintain provider networks or group purchasing networks, determining eligibility, processing and paying benefit claims, handling appeals, record-keeping and reporting and disclosure. (Doc. 19, ¶ 2; Doc. 1, ¶ 2). Defendant's administrative costs are paid from its pool of assets. (Doc. 19, ¶ 3; Doc. 1, ¶ 3). McDonough is an individual who was a covered participant under the Plan Document

and Summary Plan Description (the "Plan"), that was provided to certain employees and dependents of Pennsylvania Medical Solutions, LLC ("PMC"). (Doc. 19, ¶ 4; Doc. 1, ¶ 1). At all times relevant and material to this matter, McDonough was a full-time employee of PMC. (Doc. 19, ¶ 5; Doc. 1, ¶ 4). McDonough, through his employment with PMC, and a collective bargaining agreement negotiated by PMC and UFCW Local 1776KS (the "Union"), was a participant with the Plan. (Doc. 19, ¶ 6; Doc. 1, ¶ 5).

Defendant is a joint labor-management employee benefit trust fund, financed by contributions fixed by collective bargaining agreements or other written agreements, and administered by an equal number of trustees designated by the contributing employers and by the Union pursuant to an Agreement and Declaration of Trust ("Trust Agreement"). (Doc. 19, ¶ 7; Doc. 8, ¶ 6; Doc. 20, at 7, 50). The Trust Agreement gives the Board of Trustees authority and discretion to determine the benefits, and to revise, discontinue, improve, reduce, modify, or make changes in the Plan, the types and amounts of benefits provided, the coverage and eligibility provisions, conditions and rules, and to make all determinations on benefit claims and appeals. (Doc. 19, ¶ 8; Doc. 8, ¶ 6; Doc. 20, at 7, 50).

Article XVI of the Plan provides for express exclusions where no benefits will be paid for enumerated reasons.[1] (Doc. 19, ¶ 9; Doc. 20, at 29-30). Article XVI, Part 4 provides that no benefits will be provided for:

> Any loss resulting from injury, illness or death, which is the result of suicide, attempted suicide or suicidal ideation. Any voluntary act of alcoholic

---

[1] McDonough denies this assertion as stated. (Doc. 27, ¶ 9). McDonough contends that "while Article XVI purports to set forth enumerated express exclusions, many of these provisions including Article XVI, part 4 are unclear. Specifically, Article XVI, part 4 aggregates losses associated with injury, illness or death resulting from suicide, attempted suicide or suicidal ideation. Article XVI, part 4 conflates injury, illness or death associated with suicide with voluntary acts of alcoholic intoxication, among other things. By way of further answer, the plan does not define intoxication." (Doc. 27, ¶ 9).

intoxication or the ingestion of any drug or foreign or controlled substance taken without a physician's direction or in a manner not directed by a physician, except if the injury results from an act of domestic violence or a medical condition (including both physical and mental conditions) with documentation of causative medical/psychological sources of injury.[2]

(Doc. 19, ¶ 10; Doc. 20, at 30).

On August 21, 2020, McDonough was attending an outdoor gathering at a friend's house. (Doc. 19, ¶ 11; Doc. 1, ¶ 20). McDonough partook in the drinking of alcohol and earlier had ingested his prescribed medical marijuana. (Doc. 19, ¶ 12; Doc. 1, ¶ 21). McDonough fell from the residence's back porch, falling approximately 12 feet to the ground. (Doc. 19, ¶ 13; Doc. 1, ¶ 22). EMS arrived on scene, provided emergency medical treatment to McDonough, then transported him to the Geisinger Medical Center ("GMC"), located in Scranton, Pennsylvania. (Doc. 19, ¶ 14; Doc. 1, ¶ 22).

McDonough suffered several broken ribs, a broken hip, and a small pelvic hematoma, received successful surgical procedures at GMC, and was discharged. (Doc. 19, ¶ 15; Doc. 1, ¶¶ 26-30; Doc. 20, at 68-73). McDonough reported to GMC that he had been drinking alcohol at a party, and GMC found McDonough to be acutely intoxicated. (Doc. 19, ¶ 16; Doc. 20, at 70). GMC conducted a toxicology screen and McDonough tested positive for cannabinoids and hydrocodone. (Doc. 19, ¶ 17; Doc. 29, at 69). Claims for benefits under the Plan and bills for services rendered were sent to the Fund. (Doc. 19, ¶ 18; Doc. 1, ¶ 31). On September 8, 2020, Defendant issued a letter to McDonough requesting that he complete a subrogation form because his injuries were sustained during an accident. (Doc. 19, ¶ 19; Doc. 20, at 81).

---

[2] While McDonough admits that Defendant has correctly set forth the language of Article XVI, part 4, McDonough specifically denies that this provision supports a denial of benefits under the factual predicate presented in this case. (Doc. 27, ¶ 10).

On October 6, 2020, McDonough completed and submitted to Defendant a Proof of Employee's Claim form. (Doc. 19, ¶ 20; Doc. 20, at 83).

On October 13, 2020, Defendant issued a letter to McDonough requesting that he complete a consent to lien form. (Doc. 19, ¶ 21; Doc. 20, at 85). McDonough completed the consent to lien form and submitted it to Defendant who received it on November 12, 2020. (Doc. 19, ¶ 22; Doc. 20, at 86-88). On November 19, 2020, Defendant issued a letter to McDonough requesting an itemized listing of all PIP and uninsured, underinsured payments received. (Doc. 19, ¶ 23; Doc. 20, at 90). On January 22, 2021, Defendant issued a letter to McDonough stating, in pertinent part:

> Upon our review of the Clinicals and Lab Testing submitted by Geisinger Medical Center was forwarded to our Medical Director for review, the Medical Director concluded your claims are related to an illegal act.
>
> Any loss resulting from injury, illness or death, which is the result of suicide, attempted suicide or suicidal ideation. Any voluntary act of alcoholic intoxication or the ingestion of any drug or foreign or controlled substance taken without a physician's direction or in a manner not directed by a physician, except if the injury results from an act of domestic violence or a medical condition (including both physical and mental conditions) with documentation of causation medical/psychological sources of injury.
>
> Charges for services or losses received as a result of injury or sickness caused by or contributed to by engaging in an illegal act or occupation; by committing or attempting to commit any crime, criminal act, assault, or other felonious behavior; or by participating in a riot or public disturbance.

(Doc. 19, ¶ 24; Doc. 20, at 92).

The Plan provides:

> If you have presented a claim for benefits under this SPD, you may file a request for review of its disposition or adverse benefit determination by appealing to the Claims Review Committee of the Board of Trustees of the UFCW National Health and Welfare Fund in writing, within 180 days after receiving written notice of the Fund's action. Send your appeal to the Fund office and address it to the Claims Review Committee. You will be notified, in writing, of the decision of the Claims Review Committee within 60 days of the date your

> request for review is received, unless there are special circumstances, in which case you will be so notified and then notified of the decision within 120 days. At any time, the Claims Review Committee may refer a request for review to the Board of Trustees of the Fund.

(Doc. 19, ⁋ 25; Doc. 20, at 50).

The letter went on to provide McDonough with an explanation of his right to appeal to the Claims Review Committee within 180 days. (Doc. 19, ⁋ 26; Doc. 20, at 92).

On May 18, 2021, McDonough filed an appeal with the Claims Review Committee asserting, *inter alia*, that he had not engaged in an illegal act.[3] (Doc. 19, ⁋ 27; Doc. 20, at 94-98). In his appeal to the Claims Review Committee, McDonough addresses his voluntary intoxication by stating:

> Section 4 also contains one item that in and of itself does not constitute an illegal act: voluntary intoxication. The Fund's denial letter does not state that anyone determined that my claims were related to an act of voluntary intoxication; rather, it was determined the claims were related to an illegal act and were denied due to that relation. However, [a]n individual does not commit an illegal act by voluntarily consuming alcohol to the point of intoxication. For voluntary intoxication to amount to an illegal act requires at least one (1) additional variable be present while the individual is voluntarily intoxicated. Therefore, the only relevance my August 22, 2020, BAC should have on the Fund's review of my request for benefits is whether or not my BAC somehow played a role in me committing an illegal act and this illegal act in turn played a role in me sustaining my injuries.
>
> A none-exhaustive [sic] list of these variables includes the act of operating a motor vehicle on a public highway at a time that the operator's blood alcohol level (BAC) is above the jurisdiction's legal limit, the act of consuming alcohol prior to reaching a specific jurisdiction's legally required age, and/or being in a public space at a time when one is so intoxicated that they present a danger to themselves or others. Other examples can certainly be thought of where being intoxicated plus an act amounts to an illegal act, but none of them would apply to my claim.

---

[3] McDonough denies this assertion as stated. (Doc. 27, ⁋ 27). McDonough avers that while he did indeed file an appeal asserting that he had not engaged in an illegal act, he provided several other grounds to the Claims Review Committee as to why his appeal should be upheld. (Doc. 27, ⁋ 27).

(Doc. 19, ¶ 28). (Doc. 20, at 96).

McDonough further states that the Medical Director's determination was "based solely on the Clinicals and Lab Testing." (Doc. 19, ¶ 29; Doc. 20, at 97).

On May 25, 2021, Defendant issued a letter to McDonough acknowledging McDonough's appeal and indicating that a decision would issue within 120 days and explaining McDonough's further appeal rights from the determination of the claims review committee. (Doc. 19, ¶ 30; Doc. 20, at 100). On June 15, 2021, Defendant issued to McDonough the decision of the Claims Review Committee. (Doc. 19, ¶ 31; Doc. 20, at 102). The Claims Review Committee cited the following exclusion from the Plan:

> Any loss resulting from injury, illness or death, which is the result of suicide, attempted suicide or suicidal ideation. Any voluntary act of alcoholic intoxication or the ingestion of any drug or foreign or controlled substance taken without a physician's direction or in a manner not directed by a physician, except if the injury results from an act of domestic violence or a medical condition (including both physical and mental conditions) with documentation of causation medical/psychological sources of injury.[4]

(Doc. 19, ¶ 32). (Doc. 20, at 103).

The Claims Review Committee indicated that "[t]he Medical Records submitted by Conifer to the Fund for this 8/22/20 date of service state that the patient was 'brought in via EMS after a 12 ft fall off o [sic] porch. Pt was drinking at a party and fell off. Pt acutely intoxicated.'" (Doc. 19, ¶ 33; Doc. 20, at 103). In denying the appeal, the Claims Review Committee stated:

> The appeal is denied and the Fund's determination is upheld. The applicable Exclusion is for a voluntary act of alcoholic intoxication. The Exclusion [is] clear and explicit. The Medical Records demonstrate the application of the Exclusion. Under the circumstances, the claim was properly denied. The question of the applicability or inapplicability of the illegal act or ingestion of other foreign substances Exclusions is not pertinent to the appeal.

---

[4] McDonough admits this assertion but contends that in its June 15, 2021 decision, the Claims Review Committee, refused to acknowledge that the denial of January 22, 2021 denial of benefits was directly related to an illegal act. (Doc. 27, ¶ 32; Doc. 20, at 92).

(Doc. 19, ⁋ 34; Doc. 20, at 105).

In relevant part, the Plan provides:

> If you are not satisfied with the decision of the Claims Review Committee you may, within 60 days after the date of the Committee's Decision, appeal in writing to the Board of Trustees of the Fund by writing to the Board of Trustees at the Fund office. You will be notified, in writing, of the decision of the Board of Trustees within 60 days after the date the Board of Trustees next meets and decides your appeal after the date your appeal is received, unless there are special circumstances, in which case you will be so notified and then notified of the decision within 120 days. The Fund waives any right to assert that you failed to exhaust administrative remedies because you did not elect to voluntarily submit your appeal to the Board of Trustees after the Decision of the Claims Review Committee. Any statute of limitations or other defense based on timeliness is tolled during the time that any voluntary appeal to the Board of Trustees from the Decision of the Claims Review Committee is pending. Your decision as to whether or not to voluntarily submit a benefit dispute to the Board of Trustees after the Decision of the Claims Review Committee will have no effect on your right to any other benefits under the Fund. There is no cost to this voluntary level of appeal.

(Doc. 19, ⁋ 35; Doc. 20, at 50).

The Claims Review Committee provided McDonough with an explanation of his appeal rights. (Doc. 19, ⁋ 36; Doc. 20, at 105).

On August 10, 2021, McDonough submitted an appeal to the Defendant's Board of Trustees. (Doc. 19, ⁋ 37; Doc. 20, at 107). In his appeal, McDonough addresses the Medical Director's initial decision, and he does not address the Claims Review Committee's decision denying his appeal under exclusion number 4 for voluntary intoxication.[5] (Doc. 19, ⁋ 38; Doc. 20, at 107-113). On September 21, 2021, Defendant issued to McDonough the decision of the Board of Trustees denying McDonough's appeal, based on an independent medical opinion

---

[5] McDonough denies this assertion as stated and directs the Court's attention to his appeal, which "speaks for itself." (Doc. 27, ⁋ 38; Doc. 20, at 107-113).

("IMO") provided by Advanced Medical Reviews. (Doc. 19, ¶ 40; Doc. 20, at 115-120). The

IMO report provides:

> 2. Was alcohol intoxication the root cause of the injuries? Yes
>
> The patient's alcohol level on admission was 216, which is significantly above the legal limit for driving. While this patient was not driving at the time of injury, alcohol is well known to impair motor function and judgment increasing both intentional and unintentional traumatic injuries. The patient was reaching for a branch from a porch, which likely would have not been done if he was sober. Alcohol ingestion can be attributed to over a million deaths per year internationally. One-third of trauma patients tested positive for alcohol ingestion. Alcohol intoxication accounts for 1 in 10 deaths in working age adults. A positive blood alcohol level increases the injury severity score in trauma patients compared to un-intoxicated patients in some studies.[6]

(Doc. 19, ¶ 41; Doc. 20, at 116-117).

In relevant part, the Plan provides:

> In deciding claims, the Claims Review Committee and the Board of Trustees have broad discretion to interpret and apply the terms of this plan and SPD.
>
> The determination of the Fund will be final and binding if an objection or request for review is not timely filed. The decision of the Claims Review Committee on a request for review will be final and binding if not timely appealed. The decision of the Board of Trustees of the Fund will be final and binding on any appeal timely presented to it.
>
> The Claimant has the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act following an adverse benefit determination on review. If your claim involves disability benefits, you and your plan may have other voluntary alternative dispute options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.

(Doc. 19, ¶ 42; Doc. 20, at 51).

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be

---

[6] McDonough admits this assertion to the extent that it quotes the IMO Report, but denies "that alcohol was the cause of Plaintiff McDonough's injury." (Doc. 27, ¶ 41).

granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of

material fact.'"[7] *Velentzas v. U.S.*, No. 4: CV -07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Velentzas,* 2010 WL 3896192 at *7. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

Defendant argues that it is entitled to summary judgment because its decision to deny McDonough's claim for benefits was not arbitrary and capricious. (Doc. 18, at 15). Specifically, Defendant argues that it considered the medical records provided by the GMC and considered and applied the unambiguous language of the Plan, which excluded recovery from injuries sustained while voluntarily intoxicated. (Doc. 18, at 15-17). In opposition, McDonough maintains that Defendant has indeed violated the arbitrary and capricious standard at issue and its motion for summary judgment should be denied. (Doc. 25, at 27). Specifically, McDonough argues that the exclusionary provision does not apply because the record does not establish that McDonough intended to injure or harm himself, through alcoholic intoxication or by other means. (Doc. 25, at 3). Furthermore, McDonough argues

---

[7] *See also Beenick v. LeFebvre,* 684 Fed. Appx. 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

that the average Plan participant could not reasonably expect to be on notice that injuries unintentionally sustained while under the influence would not be entitled to benefits by application of the language of the provision in question. (Doc. 25, at 8).

A. DEFENDANT'S DENIAL OF MCDONOUGH'S CLAIMS WAS NOT ARBITRARY AND CAPRICIOUS.

Section 1132(a)(1)(B) of the ERISA provides the plaintiff a right of action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). To prevail on a claim under § 1132(a)(1)(B), the plaintiff must demonstrate that he has "a right to benefits that is legally enforceable against the plan and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (internal quotations omitted). The Supreme Court has instructed that courts are to review the denial of benefits challenged under § 1132(a)(1)(B) "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added). When a plan grants its administrator or fiduciary the discretion to determine eligibility or to construe the plan terms, "we review a denial of benefits under an 'arbitrary and capricious' standard."[8] *Orvosh v. Program of Grp. Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000).

---

[8] The parties concede that the Plan gives the Claims Review Committee and the Board of Trustees broad discretion to interpret and apply the terms of the Plan and SPD. (Doc. 1, ¶ 42; Doc. 27, ¶ 42). McDonough argues this creates an inherent conflict of interest in the structure of the Plan because Defendant both administers and funds the Plan and the Court should, therefore, apply a sliding scale "heightened arbitrary and capricious" standard of review. (Doc. 25, at 6). However, the Third Circuit has held that an ERISA plan administrator's conflict of interest does not result in heightened scrutiny of a decision to deny benefits. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010). Furthermore, although a conflict arises where an employer both funds and evaluates claims, that conflict alone does not render a fiduciary's adverse benefit determination an abuse of discretion. *Noga v. Fulton*

"An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)) (internal quotation marks omitted). The Third Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fleisher*, 679 F.3d at 121. Under the arbitrary and capricious standard, the "scope of review is narrow, and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" *Abnathya*, 2 F.3d at 45 (quoting *Lucash v. Strick Corp.*, 602 F. Supp. 430, 434 (E.D. Pa. 1984)). Therefore, the Court is limited to considering only the evidence that was before Defendant at the time it reviewed and decided McDonough's claim. *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997).

In reviewing the parties' statement of facts, the following facts are undisputed. During the relevant time period, McDonough was covered participant of the Plan that Defendants provided to certain employees and dependents of PMC. (Doc. 19, ⁋ 4; Doc. 1, ⁋ 1). Article XVI of the Plan delineates a list of benefits that are excluded from coverage. (Doc. 20, at 30). One of these specific exclusions from the Plan is:

> Any loss resulting from injury, illness or death, which is the result of suicide, attempted suicide or suicidal ideation. Any voluntary act of alcoholic intoxication or the ingestion of any drug or foreign or controlled substance taken without a physician's direction or in a manner not directed by a physician, except if the injury results from an act of domestic violence of a

---

*Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 276 (3d Cir. 2021) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-117 (2008). Rather, it is just one factor to be considered in evaluating whether that decision constituted an abuse of discretion. *Noga*, 19 F.4th at 276; *Howley*, 625 F.3d at 792. Thus, the Court will interpret Defendant's denial of benefits under the arbitrary and capricious standard. *Orvosh*, 222 F.3d at 129.

medical condition (including both physical and mental condition with documentation of causative medical/psychological sources of injury.

(Doc. 20, at 30).

According to the record, on or about August 22, 2022, McDonough fell off a back porch, falling approximately 12 feet to the ground. (Doc. 19, ¶ 13; Doc. 1, ¶ 22; Doc. 27, ¶ 13). Having suffered significant injuries, McDonough was transported to GMC via EMS. (Doc. 19, ¶ 14; Doc. 1, ¶ 24; Doc. 27, ¶ 14). Records show that the GMC found McDonough to be acutely intoxicated and that McDonough tested positive for cannabinoids and hydrocodone. (Doc. 20, at 69-70). The Court concludes that the evidence in the record substantially supports the Defendant's finding that McDonough was legally intoxicated at the time of the accident, putting into play the intoxication exclusion. (Doc. 20, at 116-117). Under the intoxication exclusion, coverage can be denied for injury resulting from a voluntary act of alcohol intoxication. (Doc. 20, at 30).

Thereafter, a claim for benefits was submitted to Defendant on McDonough's behalf. (Doc. 19, ¶ 18; Doc. 1, ¶ 31; Doc. 27, ¶ 18). According to a notice of denial dated January 22, 2021, from Defendant, the Plan did not cover McDonough's claims because they were related to an illegal act. (Doc. 20, at 92). In a subsequent notice of denial of McDonough's appeal dated June 15, 2021, the Claims Review Committee upheld Defendants' decision because of the intoxication exclusion, stating:

> The appeal is denied and the Fund's determination is upheld. The applicable Exclusion is for a voluntary act of alcoholic intoxication. The Exclusion [is] clear and explicit. The Medical Records demonstrate the application of the Exclusion. Under the circumstances, the claim was properly denied. The question of the applicability or inapplicability of the illegal act or ingestion of other foreign substances Exclusions is not pertinent to the appeal.[9]

---

[9] To the extent that McDonough argues Defendant abused its discretion in denying medical benefits first because his "claims are related to an illegal act," and then to cite the

(Doc. 20, at 104).

On September 21, 2021, the Board of Trustees duly considered and denied McDonough's appeal for the reasons set forth in the Claims Review Committee's decision and based on the independent medical opinion received by Defendant, revealing McDonough's blood alcohol level was 216 upon admission. (Doc. 20, at 115). McDonough admitted that he had been drinking alcohol at a party, was found to be acutely intoxicated, and tested positive for cannabinoids and hydrocodone upon admission to GMC. (Doc. 20, at 69-70). An inference for intoxication under Pennsylvania law arises at a blood alcohol level of 80 milligrams per deciliter. 75 Pa.C.S. § 3802. Thus, McDonough's blood alcohol content, reported at 216 upon admission, was more than the legal limit for an individual to be deemed intoxicated. (Doc. 20, at 116-117); *see Gillar v. Blue Cross/Blue Shield of S.C.*, 413 F. Supp. 3d 376, 382-83 (M.D. Pa. 2019).

McDonough's initial application for benefits was denied on the finding that his claims were related to an illegal act. (Doc. 19, ¶ 24; Doc. 20, at 92). McDonough appealed the initial denial of benefits on the basis that he had not engaged in an illegal act, stating that voluntary intoxication does not "in and of itself" constitute an illegal act. (Doc. 20, at 96). Furthermore,

---

alcohol exclusion in subsequent notices of denial (Doc. 25, at 7), the Court's focus must be on the Plan's "final, post-appeal decision," as "[t]o focus elsewhere would be inconsistent with ERISA's exhaustion requirement." *Reed v. CITIGROUP INC*, 658 F. App'x 112, 116 (3d Cir. 2016) (citing *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 191 n.11 (3d Cir. 2011), *abrogated on other grounds* by *Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 557 U.S. 136 (2016). While a court may consider "pre-final decisions as evidence of the decision-making process that yielded the final decision," those decisions "ought merely to inform a court's review of the final decision." *Reed*, 658 F. App'x at 116 (citing *Funk*, 648 F.3d at 191 n.11).

McDonough insists that alcohol was not a cause or contributing factor in the injuries he sustained, stating:

> No representative of the Fund or the Medical Director's office requested I provide a medical or personal history; no witness statements were taken regarding whether intoxication was a cause or contributing factor in the injuries I sustained. Had they, it would have further confirmed that I was not displaying signs that would lead one to conclude that my claim is related to voluntary intoxication.

(Doc. 20, at 96-97, 111-112).

In conjunction with that appeal and subsequent appeal, McDonough could have presumably provided an alternative explanation as to the cause of the accident and his resulting injuries, if such were the case. (Doc. 20, at 97). No such evidence exists in the record. Given the evidence of his blood alcohol content, the contents of the IMO, and the circumstances of the accident, there is at least some evidence from which a reasonable mind might accept as adequate to support the conclusion that his intoxication was a cause of the fall and his resulting injuries. *See Gillar*, 413 F.Supp.3d at 383 (finding decision to deny medical benefits under intoxication exclusion was not arbitrary and capricious where record evidence substantially established defendant's finding that plaintiff was legally intoxicated at time of accident, and finding that, upon applying the intoxication exclusion, coverage could be denied for any service, medical supplies, charges, or losses resulting from a member being legally intoxicated or under the influence of any drug or other substance); *see also Moore v. RECO Equip. Inc. Emp. Welfare Benefit Plan*, No. CV 16-1017, 2017 WL 2590178, at *1 (W.D. Pa. June 15, 2017) (concluding defendant's interpretation of the policy term "accidental bodily injury . . . caused directly and independently of all other causes by accidental means" was not arbitrary and capricious and substantial evidence supported defendant's conclusion that decedent was an alcoholic and alcoholism was a contributing cause of his death); *Lake v.*

*Aetna Life Ins. Co.*, 54 F. Supp. 3d 331, 337 (D.N.J. 2014) (holding that defendant insurer was not arbitrary and capricious in denying benefits where police report, medical examiner's report, and toxicology report, provided evidence sufficient for the determination that decedent's intoxication caused or contributed to his car accident).

Further, the Court finds unavailing McDonough's argument that the average Plan participant could not be reasonably expected to be on notice that injuries unintentionally sustained while under the influence would not be entitled to benefits. (Doc. 25, at 8). In *Ayers v. Maple Press Co.*, 168 F. Supp. 2d 349, 356 (M.D. Pa. 2001), the court considered the following exclusion:

> charges due to an attempted suicide, while sane or insane, or any intentionally self-inflicted injury, including injuries incurred while under the influence of illegal drugs or alcohol in excess of the legal limit; except for treatment related directly to mental and nervous disorders...

> *Ayers*, 168 F. Supp. 2d at 355.

The Court found that the exclusion covered suicide attempts and injuries the claimant intended to cause him or herself and that the alcohol provision precluded claimants from asserting that their inebriated state makes an injury unintentional. *Ayers*, 168 F. Supp. 2d at 355. Unlike the exclusion in *Ayers*, the alcohol exclusion at issue in this case is included in a separate sentence from the suicide provision. (Doc. 20, at 30). The exclusion plainly provides that no benefit will be paid under the Plan for any voluntary act of alcoholic intoxication except in the cases of domestic violence or a medical condition. (Doc. 20, at 30). There is no indication in the Plan that the injuries have to result solely from intoxication but only that the injuries be a result of intoxication. *See Gillar*, 413 F.Supp.3d at 382. As discussed *infra*, substantial evidence supports Defendant's conclusion that McDonough's intoxication was a contributing cause of his accident and no evidence in the record provides that an exception

applies in this case. (Doc. 20, at 69-70). Therefore, the Court finds that Defendant's decision applying the intoxication exclusion to deny McDonough benefits was not arbitrary and capricious. Defendant is therefore entitled to judgment as a matter of law. *See Gillar*, 413 F.Supp.3d at 383.

IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**. (Doc. 17). An appropriate Order shall follow.

BY THE COURT:

Dated: August 29, 2023

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**